In the Matter of the Claim of ELSIE HOFMANN, Respondent, v. TOWN OF HURLEY et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, November 14, 1962.

*Walworth & Harding* (*James C. Harding* of counsel), for appellants.

*Robert A. MacKinnon* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General* (*John J. Quinn* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

HERLIHY, J. Appeal by the Fire District and carrier from a decision of the Workmen's Compensation Board awarding death benefits, pursuant to the Volunteer Firemen's Benefit Law.

The facts are not disputed.

The decedent was a member of the appellant's volunteer fire department and in March, 1958, he was ordered to assist his fellow fire policeman, Henry Hopkins, in directing traffic away from the entrance to the firehouse "so the equipment could move", there being a church social next door at the fire hall. Mr. Hopkins stopped for the decedent at his home about 8:15 P.M. and they proceeded to the firehouse, wearing their uniforms and shields, and remained on duty until approximately 11:30 P.M. when the fire captain told them they could leave. Mr. Hopkins then drove decedent home where he alighted on the main road. Subsequently, decedent was found in the road by a passing motorist, suffering from severe injuries which resulted in his death without regaining consciousness. It was never determined how the accident happened. The above facts sustain the finding by the board that the duties performed by the decedent at the firehouse were firemanic in nature and the carrier in its reply brief, dated May 5, 1960, seems to concede this point by stating "If the accident had occurred while deceased was actually at the Fire House there would be coverage under the law".

The board determined that the injuries and resulting death of the decedent occurred while he was still in the line of duty, pursuant to section 5 (subd. 1, par. c) of the Volunteer Firemen's Benefit Law, quoted in part in the board's memorandum as follows: " The duties and activities in relation to which benefits shall be paid and provided pursuant to this chapter are: * * * c. While, within the state and pursuant to orders or authorization, performing duties at the firehouse, or elsewhere, directly related to (1) the prevention of fires or other disasters * * * including necessary travel directly connected therewith."

This appeal presents a novel question as to whether or not a volunteer fireman is covered under the law while traveling to and from a firemanic duty not of an emergency nature.

That the law did not intend to cover volunteer firemen under all circumstances is gleaned from section 5 itself which provides that under some circumstances benefits are not payable (§ 5, subd. 2) and the following quote from the last paragraph of section 5: " This subdivision shall not be deemed * * * to prevent the securing of insurance pursuant to section two hundred twenty-two of the insurance law to cover volunteer firemen when engaged in activities other than those for which mandatory coverage is provided by this chapter."

The board has determined that the duties performed at the firehouse were related directly to the prevention of fires or other disasters. It is not disputed that the decedent and his partner were supervising the driveway to the firehouse to prevent the parking of automobiles in front thereof and keeping the lane open so that in the event of a fire call, the fire apparatus would not be delayed by parked automobiles, which had gathered because of a social event. Such determination was factual and within the province of the board and we cannot say, as a matter of law, that such duties did not relate directly to fire prevention. (*Matter of Paden* v. *Dix Hills Fire Dist.,* 12 A D 2d 202; *Matter of Sloper* v. *Village of Westport,* 13 A D 2d 566.) The prompt response to a fire call may limit the fire and control the degree and the seriousness thereof. While the duties were not of emergency status, they were directly associated with fire prevention and thus within the provision of the section relied upon by the board in its memorandum decision.

The remaining question concerns whether his duties were of such a nature as to afford him protection under that part of paragraph c which provides " including necessary travel directly connected therewith ". In attempting to determine the

intent of the Legislature, it is necessary to consider the different connotation of the words "necessary travel" as used under section 5.

Paragraphs a and b are intended to cover a fireman while traveling to a fire or emergency from his home and while returning therefrom, while serving with his own fire department or another fire department. The phraseology in paragraphs a and b states "necessary travel to * * * and necessary travel returning from a fire".

Paragraphs f, g and i make an exception to the generalized phrase by using words of restriction "including necessary travel directly connected therewith *other than travel to or returning from such [meetings, work, practice]*." (Emphasis supplied.)

Paragraphs a and b of subdivision 1 of section 5 provide portal-to-portal coverage. Paragraphs f, g and i explicitly do not provide such coverage. Paragraph c, with which we are concerned, states "necessary travel directly connected therewith". The appellants contend that if paragraph c intended to include portal-to-portal coverage, the language in paragraphs a and b would have been used.

But it is just as reasonable to argue that if portal-to-portal coverage were *not* intended in paragraph c, the language in paragraphs f, g and i would have been used. Thus, the language used in paragraph c is not governed by the language in the other paragraphs in either respect. This being social legislation, it is subject to a liberal interpretation and we determine that it was the intendment of the Legislature by the use of the words in paragraph c to provide portal-to-portal coverage, and under the facts of this case, the decedent was covered at the time of the accident which resulted in his death. Such an interpretation would seem to be within the spirit of the act, which provides in part as follows (§ 2): "In recognition of the unselfish service by these volunteers, government has undertaken to provide for them and their families some measure of protection against loss from death or injuries in line of duty."

Appellants argue cogently that the law was never intended for such coverage and that following his release from duty, he was free to go as he pleased, but there is no claim made herein of any deviation. (Cf. *Matter of Sloper* v. *Village of Westport, supra.*)

The appellants further argue that in any event he had arrived home and that the travel had ended. It is not disputed, however, that he was found severely injured in the public highway, presumably not having reached his own property, all of which was a factual determination and within the realm of the board.

The accident being unwitnessed, there is a presumption that the claim comes within the provision of the law. (Volunteer Firemen's Benefit Law, § 44.)

The decision and award should be affirmed, with one bill of costs to be shared equally by the Workmen's Compensation Board and the claimant-respondent.

Coon, J. P., Gibson, Reynolds and Taylor, JJ., concur.

Decision and award affirmed, with one bill of costs to be shared equally by the Workmen's Compensation Board and the claimant-respondent.